### FOR THE

## COUNTY OF GRAND ISLE,

### JANUARY TERM, 1853.

------

PRESENT,

Hon. ISAAC F. REDFIELD, CHIEF JUDGE.
Hon. PIERPOINT ISHAM, } ASSISTANT JUDGES.
Hon. MILO L. BENNETT, }

------

### GARDNER TRACY, EXPARTE.

*Habeas Corpus.   Justice of the Peace.   Officer.*

To justify a discharge on *habeas corpus*, for any irregularity accruing before judg
ment, it should ordinarily be of a character to render the judgment void.

A justice has a discretionary power to continue a case for a week or more, and
may require the same jury to attend again, though the better course might be,
to summon a new jury at the continued term, as is done in the County Court.

In that class of offences, where the ordinary judgment will not extend to the in-
fliction of imprisonment, by way of punishment, primarily, the accused may ap-
pear by counsel, and having made appearance, the trial may proceed, without
regard to the continued presence of either the respondent, or his counsel.

Under the license law of 1850, justices of the peace had concurrent jurisdiction
with the County Court, (see Comp. Stat. p. 507, § 12,) whatever the amount of
penalty sued for.

Gardner Tracy, *Exparte.*

Where the officer, upon committing the respondent, left a copy of the mittimus with the jailer, and it appeared upon the face of the copy, that the signature of the officer was intended to authenticate the paper, *as a copy of the precept and return*, it was held, that such a mere informality, does not render the commitment and detention illegal.

HABEAS CORPUS. The petition was as follows : " Your peti-
" tioner, Gardner Tracy, of South Hero, in the county of Grand
" Isle, humbly shows to your Honors, that he is now confined in
" the common jail, at North Hero, in the county of Grand Isle, by
" Charles H. Clark, sheriff of said county, by virtue of a process
" of mittimus, a copy of which is hereto annexed ; and your peti-
" tioner shows to your Honors, that A. M. Kinney, who issued said
" process or mittimus, imposed said fine in said mittimus, without
" giving this defendant any hearing on the same ; and your peti-
" tioner further shows to your Honors, that said Kinney, acting, or
" pretending to act as a justice of the peace, caused six men to be
" summoned before said Kinney, without the knowledge or consent
" of your petitioner, and in your petitioner's absence, and said six
" men, so summoned as aforesaid, without your petitioner being
" present by himself or counsel, gave a verdict against your peti-
" tioner, upon which said Kinney rendered judgment and issued the
" mittimus; and your petitioner prays that a writ of *Habeas Cor-*
" *pus* may be issued in his behalf, and proceedings be thereon had
" agreeably to law."

The officer's return on the mittimus was as follows :

" STATE OF VERMONT, }
" *Grand Isle County, ss.* }          NORTH HERO, Dec. 13, 1852.
     " Then by virtue of this precept, I arrested the within named
" Gardner Tracy, and read this in his hearing, and he, refusing to
" pay said fine and costs, I delivered the said Gardner Tracy to
" the keeper of the said jail, in North Hero, within said prison, as
" I am hereby commanded.          Attest, ————, *Constable.*"

It appeared from the records and files of the justice, that the town grand juror, preferred his complaint or indictment in eleven counts, charging the respondent with violating the license law. That the respondent plead not guilty, and thereof put himself on the country for trial ; that a jury was summoned, and appeared, and the grand juror asked for a continuance ; the justice granted it, and requested and directed the jury again to appear ; that they

did with the exception of one, in whose stead the officer drew another, who was summoned and attended.	The jury found the respondent guilty on the first six counts, and not guilty on the five remaining counts.	Thereupon the justice sentenced the respondent to pay a fine of sixty dollars to the treasury of the town of South Hero, and the costs of prosecution, and to stand committed until he shall have complied with the sentence.

*Stevens & Edson* for relator.

*W. W. White* for the State.

The opinion of the court was delivered by

REDFIELD, Ch. J.	The relator was imprisoned in the common jail, in this county, by . virtue of a mittimus from a justice of the peace, imposing a fine of sixty dollars upon him, for alledged violations of the law against selling spirits without license.	Three principal objections are urged, why the prisoner should be discharged.	1. That the trial was irregular.	2. That the judgment, being beyond the jurisdiction of the court, is therefore wholly void.	3. That the copy of the mittimus left by the officer with the jailer, not being properly certified by him, renders the commitment void.

In regard to the first exception, it may be still regarded as unsettled, how far it is competent for this court to revise the proceedings of an inferior court upon *habeas corpus.*	It is certain no such wide range was ever claimed for this process, at common law. The statute of this State does indeed require the court to discharge the prisoner, on this proceeding, if, upon a full hearing, it shall appear, that " law and justice shall require " it.	This is a provision of very wide extension, but so indefinitely expressed, as to require very considerable qualification, to bring it within reasonable limits. And in regard to all general statutes, such reasonable limitations are required to be put upon most general enactments.	The most indispensible qualification required, by all general statutes, is, that the words used shall be limited to their reasonable import, with reference to the subject matter.	Law and justice might require one course in regard to the trial of this case, upon appeal to the County Court, and a very different course, if the case were brought

before this court by *habeas corpus.* To justify a discharge on *habeas corpus,* for any irregularity occurring before judgment, it should ordinarily, perhaps, be of a character to render the judgment void. And it does not appear to us, that any such irregularity occurred in the trial of this case, so far as the record of the justice shows, and nothing else was shown, or could be probably, in this proceeding. The course was somewhat singular, and not altogether to be encouraged, perhaps. It is common to continue a cause from day to day in a justice court, after the jury is summoned, for the convenience of the trial. This is indispensible, and we perceive no fatal want of authority, in a justice, to continue the case a week or more, as in the present case, requiring the same jury to attend again. The better course might be to summon a new jury at the continued term, as is done in the County Court. This is more in accordance with the spirit of our statute upon the subject. But after all, we think the statute having interposed no positive bar to such continuance, it must be regarded as discretionary with the justice.

But it is further objected to the proceeding before the justice, that the respondent not appearing, at the continued term, the court could not render judgment. If this view were seriously to be entertained, it would afford a very easy and convenient mode of avoiding the jurisdiction of courts, in cases of misdemeanor. But nothing is better settled, than that in that class of offences, where the ordinary judgment will not extend to the infliction of imprisonment, by way of punisment primarily, the accused may appear by counsel, and having made appearance, the trial may proceed, without regard to the continued presence of either the respondent or his counsel. It could scarcely be claimed, that if in the progess of the trial, after the jury was impanneled and the issue joined, the respondent 'not being in court, or being there upon bail, or upon his parol, and the trial progressing, he and his counsel should choose to step out of court, the further progress of the trial must be arrested at that point. No supposition could be more absurd. No doubt the court might proceed to a verdict and judgment, and issue their mittimus to carry the same into effect. And this is the present case, as treated by the court. The justice might have been justified, perhaps, in rendering a more summary judgment. But the more judicious mode undoubtedly, was the one pursued in the

present case : thus, by examining the testimony, to secure to the defendant his just rights, even when he chose to disregard them.

2. The statute is so explicit upon the subject, it is difficult to conceive how any doubt could ever have arisen, in regard to the full jurisdiction of justices, over all offences against the statute in question. The 12th § p. 507 Comp. Stat. expressly provides, that "prosecutions for the violation of this act may be brought before any justice of the peace." This, by necessity, must include all prosecutions, whatever the amount of penalty sued for. If it were only to extend to the ordinary limit of a justice's jurisdiction, it is natural to conclude, that something of that kind would appear in the act. But the contrary is very obviously the purpose of the statute, and this court have neither the power, or the desire, to disappoint that purpose. It is no concern of ours, whether such a provision is by us regarded as so desirable, in this class of offences, as to justify a special statute to that effect, or not. The legislature chose, for reasons satisfactory to themselves, to give concurrent jurisdiction to justices and the County Court, for all prosecutions for violations of this statute ; and it is a matter of infinitely little importance to us, or to others, what the people at large, or any given portion of the body politic, may think of the wisdom or justice of such a provision, so long as it is clearly made, and no question can be made of the perfect right of the legislature to do so.

If it were important, it would not be difficult, doubtless to show that there is great irregularity and imperfection in the practical operation and administration of the criminal law of the State. To one who has seen much of it, and found it sometimes utterly futile to attempt to bring about any thing like equal and unfailing justice to all, it is by no means surprising, that men, who have attended to the working of the system, only in some particular department, should painfully feel its impotence there, and strive to remedy it by further legislation. Whether the thing is remediable, by any more specific enactments, is perhaps more questionable. It has appeared to me, that generally, the present defects exist more in the administration, than in the provisions of the law. The whole system, in its practical operation, is undoubtedly pervaded more or less by a spirit of favoritism, of which the administrators are generally unconscious. So much is this the case, that the public would not now readily be brought to tolerate a strict and impartial and se-

vere administration of the criminal law, in any of its departments. It would be regarded as tyranny. Especially is this the case, in regard to offences of an infamous character, such as disqualify the convict from giving testimony, disfranchise him, or expose him to punishment in the State prison.

To illustrate my meaning and prevent misapprehension, I will allude to the most common expedient, and probably the most reprehensible practice here, in the efforts to screen what are esteemed hopeful offenders, (and that is made, sometimes, I fear, to include all who have property or influence, or friends,) from coming to trial. This is more commonly done by giving nominal bail before some magistrate, who either does not comprehend very fully the importance of his duty, or who has not perhaps quite nerve enough, (and it requires a good deal, when beset by an array of friends and neighbors,) to do his duty. This done, the bonds are expected to be chancered to a still more insignificant sum, if possible, in the higher courts, and thus, all are made, in some sense, if conscious of the full purport of their conduct, to become accessory to the virtual compounding of felony. There is, no doubt, quite too much of this practised in our courts, to allow me to criticise, with much severity, any statute intended to render the administration of criminal law more uniform. And I need not say, that I have not generally deemed it my duty to study devices, whereby offenders could escape merited punishment. And I have not often had to reflect upon the possibility that any innocent man ever fell under the censure of the law, through any instrumentality of mine, and I should certainly regret that the law should compel me to connive at the escape of the confessedly guilty. I believe, and of course, I must be permitted to act upon the belief, that the law *must* be made a " terror to the evil doer," in order that it may *become* a praise, " to him that doeth well." I certainly should not have felt bound to say this much, if it were not for the air of assurance, with which courts are too often addressed, and their decisions viewed, upon the subject of laws, framed with an avowed purpose of driving their enforcement straight over all the impediments which lie in the way of their purpose. It seems to be supposed, that there is something dishonorable in such an attempt, by the legislature, and that the courts, by right or by wrong, in all practicable or possible modes, should study and strive to defeat such attempts. This,

in my judgment, is a fatal misapprehension, and one which we do not desire to encourage, even by acquiescence. It is not our business to thwart any legal and legally expressed purpose of the legislature, in their statutes.

3. In regard to the third point, which is merely formal, and which, if we correctly understood it, was, that in the copy of the mittimus left with the jailer, the return copied thereon did not state that any copy had been left, but the return upon the original mittimus did show that the copy had been left, and that it was true and attested. All the possible defect in this copy is then, that there is no express certificate upon the copy, that it is a true copy of the original mittimus and return. But it is given to the jailer as a copy, and contains upon it, the attestation of the officer to his proceedings, up to the very moment of making the copy. The return states, that " by virtue of this precept" the relator is arrested, " he refusing to pay said fine and costs," and committed to jail, &c. " as I am hereby commanded." All this is attested by the officer. And the officer, in his return made to this court, of the cause of detaining the relator, says, he is detained by virtue of this copy of a mittimus, and the return thereon. Still it is obvious, the additional certificate that the copy is a true copy, is usual; and the statute, in terms, requires no doubt, that it should be authenticated by the signature of the officer, officially made. But no precise form of words is requisite; and practically, this copy would not have been any more explicitly authenticated by the addition of " a true copy," with the official signature repeated, than it now is. And that is all which is ever practised, in authenticating officers' copies, and it does not seem to us that this is indispensable, if upon the face of the copy left, it sufficiently appears, that the signature of the officer was intended to authenticate the paper, *as a copy of the precept and return.* This is certainly very apparent in the present case. This is really the only point upon which I have entertained any serious doubt. The court are not prepared to say, that such a mere informality shall render the commitment and detention illegal. We think it does not.

Respondent remanded to his former custody.