IN RE BENJAMIN F. GREENOUGH.

*Extradition of fugitives from justice.     Requisition.     Obtaining money under false pretences.*

The provisions of Art. 4, sec. 2, of the United States Constitution, relative to the surrender of fugitives from justice by the States, and the Act of Congress, of 1793, in regard to the same subject, apply to one who has been indicted for obtaining money or property under false pretences in a State, which has by statute made that offence a crime.

It seems that by the words " or other crime " used in the United States Constitution in relation to this subject, are meant only crimes of a similar nature to those properly denominated felonies. BENNETT, J.

When the fugitive is charged with crime by affidavit, and it appears clearly from the whole affidavit that no crime has been committed, 'it seems that a court, upon *habeas corpus*, may properly discharge the prisoner, notwithstanding the executive, upon whom the requisition is made, has granted a warrant upon which he has been arrested; but *aliter*, when the prisoner has been *indicted* in the State from which the requisition comes. BENNETT, J.

G. was indicted in Illinois, under a statute of that State, which prohibited, under a penalty, any one from fraudulently obtaining money by false pretences. The indictment set forth, substantially, that G. falsely and fraudulently represented to C., that by means of a certain *recipe*, of which he pretended to be the owner, a compound could be produced which would be a non-explosive burning-fluid; that by such fraudulent representation he induced C. to purchase this *recipe* and pay him therefor a sum of money; that in truth the *recipe* would not make a non-explosive burning-fluid, and that this was well known to G.; *Held*, that the facts set forth in the indictment constituted the offence of obtaining money by false pretences, and that G., having been arrested upon a warrant issued by the Governor of this State,

in compliance with a requisition duly made by the Governor of Illinois and having been surrendered to the agent of that State, to be transported thither, was not entitled to be discharged from the latter's custody upon *habeas corpus.*

If a false assertion be made in regard to an article, and money be thereby fraudulently obtained, the falsehood is a *false pretence* within the statute against obtaining money by false pretences, if, in order to ascertain whether the representation is false, it is necessary to apply tests or experiments to the article. BENNETT, J.

HABEAS CORPUS, directed to Isaac B. Crane, upon the petition of Benjamin F. Greenough.

Crane stated in his return that he held the relator in custody as agent of the State of Illinois, under a requisition from the Governor of that State upon the Executive of Vermont; that under this requisition the Governor of Vermont had issued his warrant for the arrest of the relator, and his surrender to Crane, as agent of the State of Illinois; that he had been so arrested and surrendered, and that the respondent held him by virtue of such requisition, and for the sole purpose of transporting him to Illinois, and delivering him to the authorities of that State.

Copies of the requisition, and all the accompanying papers, were attached to the return, from which it appeared that the requisition was duly executed by the Governor of Illinois, and set forth that Greenough had been indicted in Cook County, in that State, for the crime of *obtaining money under false pretences,* and was a fugitive from the justice of Illinois, and had taken refuge in Vermont. The requisition, in addition to the request for the arrest of Greenough, also required that he be surrendered to Isaac B. Crane, therein described to be the duly authorized agent of the State of Illinois, to receive the prisoner and convey him to that State to be dealt with according to law.

Attached to the requisition was a duly authenticated copy of the indictment, which appeared to have been found by the Grand Jury of the Recorder's Court in the city of Chicago, in Illinois, and alleged in substance that the relator, in Chicago, on the 16th of July, 1857, with the intent to cheat and defraud Archibald M. Crane, falsely pretended to said Crane that he owned and had good right to sell the following *recipe,* viz: "Take one pound of the

super carbonate of soda; dissolve it in two quarts of soft water; shake it well several times during the first twenty-four hours ; let it settle clear; use one pint of this mixture to forty gallons of common burning-fluid, and let the barrel stand twenty-four hours before using ;" and that by this *recipe* a valuable non-explosive burning fluid could be manufactured; whereas in truth it would not make a non-explosive burning fluid, as the said Greenough well knew; that the said Greenough by the said false pretences did sell to the said Crane the said *recipe*, and his knowledge how to manufacture said compound, and the right to make and sell the same in Chicago, for the sum of twenty-one hundred dollars, and that he thereby and with the intent to defraud the said Crane, did obtain from him as part of said consideration, the sum of six hundred dollars, and also three promissory notes signed by said Crane and payable to said Greenough, for five hundred dollars each, in six, nine and twelve months from date, respectively.

Attached to the requisition was also a duly exemplified copy of the Statute of Illinois, under which this indictment was found, which was as follows:

" If any person shall knowingly and designedly, by any false pretence or pretences, obtain from any other person or persons any choses in action, money, goods, wares, chattels and effects, or valuable thing whatever, with intent to cheat or defraud any such person or persons of the same, every person so offending shall be deemed a cheat, and upon conviction shall be fined in any sum not exceeding one thousand dollars, and imprisoned not exceeding one year, and shall be sentenced to restore the property, so fraudulently obtained, if it can be done."

An affidavit of Archibald M. Crane also accompanied the requisition, to the effect that Greenough was a fugitive from the justice of the State of Illinois, and was within this State at the time the requisition was obtained.

*A. M. Dickey* and *Ormsby & Farnham*, for the prisoner.

1. The offence charged in the indictment on which the requisition in this case is founded, is not, within the meaning of the constitution and act of 1793, a crime.

2. Unless the indictment charges a crime within the meaning

of the constitution and act of 1793, the executive has no right to surrender the person charged.

3. What the words in the constitution and act of 1793 mean, must be settled by a resort to the intention of the lawgiver; and when the meaning is determined, that meaning, and not what any State may enact to be a crime, should govern in the premises.

4. The framers of the constitution never intended to bind each State to co-operate with sister States in executing any penal code such States may see fit to enact. Those framers intended what was, *at that time*, understood by the word crime. See *Webster's Dictionary*.

It is a provision of the organic law of the land and not subject to enlargement or diminution.

5. Neither the popular nor the legal import of the offence of obtaining goods by false pretences was understood to be a crime, at least at the period of the formation of the constitution, or act of 1793. At that time such a transaction did not constitute a misdemeanor.

6. Several, or all of the States, perhaps, have made the obtaining of goods, etc., by false pretences, penal, although the enactments as to the amount of penalty are not uniform. These State laws are copied from the act of 7 & 8 Geo. IV, passed as late as 1828; and the offence is by that act expressly declared to be a misdemeanor.

7. The acts recited in the indictment in this case, do not constitute the misdemeanor created by the act of Geo. IV, and by the laws of this and other States; *Rex* v. *Powell*, 1 Starkie, 402.

*Chas. C. Dewey*, States Attorney, and *A. Underwood*, for the government.

1. The proceedings for the arrest of the prisoner, instituted upon art. 4, sec. 2, of the constitution of the United States, and the act of Congress, in pursuance thereof, passed February 12, 1793, are in regular and legal form; for it appears that, 1st, the prisoner has been demanded of the Governor of Vermont by the Governor of Illinois; 2d, a copy of the indictment found, charging the prisoner with having committed a *crime*, is presented; 3d, and that said indictment is properly authenticated.

2. It is insisted by the counsel for the relator, that the word " *crime,*" as used in the constitution, is synonymous only with such offences as are recognized by the common law, for the commission of which ignominious punishments are inflicted, and properly denominated *felonies.*

But no such construction can be predicated upon the language of that instrument. The words are " treason, felony or *other crime,*" that is, crimes *other* than *treason* and *felony ;* meaning those crimes which are of less grade. Were it not so, the words " other crime" would be mere tautology. We insist, therefore, that the phrase " *other crime,*" as used in the constitution, includes all offences against the public, subject to indictment, whether recognized as such by the common law, or created by the statutes of the several States; *In re* Clark, 9 Wend. 222; *In re* Hayward, 1 Sand. 701; *Johnston* v. *Riley,* 13 Geo. 97.

3. It is also insisted by the relator, that this provision of the constitution was intended merely to regulate and make obligatory upon the several States the surrender of fugitives from justice, only to the extent that the duty is recognized as abiding in the comity of nations, under which extradition is usually denied unless the crime charged is a *felony,* or involves deep atrocity; Vattell, book 2, ch. 6, § 76.

First, If this is indeed the entire scope and meaning of the provision, the framers of the constitution as before shown, made use of language exceedingly inapt to express an intent thus restricted.

Second, It seems much more rational to suppose that as the same section of the constitution provides that " *the citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States,*" it was the intention to make the liability for penalties incurred by the commission of offences against the laws of the several States, co-extensive with the privileges and immunities enjoyed; and to provide that no person shall commit an offence criminally cognizable in one State, and find a sanctuary in any other State. In other words, that it was the intention to make the territory of all the States *common ground* for the arrest of those who commit offences against the laws of any one of the States of the confederacy. And this is the natural import of the language.

4. The court can not go behind the warrant to inquire into the merits of the prosecution instituted in the courts of Illinois, either as upon demurrer, or upon issues of fact; *Penn.* v. *Daniels*, 6 Penn. Law Jour. 417, *note; State* v. *Buzim*, 4 Har. 572; Brightley, 294.

5. But should it be assumed that this court will examine the laws of Illinois so far as to determine whether the indictment *charges* an offence under the statute, we submit that the act charged falls clearly within the *offence* of the statute.

First, The statute is identical with the act of 30 Geo. II. C. 24, which was remedial of the common law, and of 33 Hen. VIII. C. 1, which required a false seal or token to be used. This statute has been liberally construed by the English courts, for the reason probably, that, as said by Ashurst, J. in *Rex* v. *Young* et *als.*, 3 T. R. 102 : " it was passed to protect the weaker part of mankind." American authorities also sustain this indictment. *Cone* v. *Strain*, 10 Wend. 521; Prec. Ind. & Pleas, Wharton (587) n.; *vide* Archibald's definition of *false pretences*, 466–1.

Second, In this case the purchaser could not know that the recipe was of no value *except by experiment and the application of tests*. To all appearance it was what it purported to be — a valuable article and well calculated to deceive a man of ordinary prudence.

BENNETT, J. The second section of article four in the United States Constitution, provides that a person charged in any State with treason, felony or other crime, who shall flee from justice, and be found in any other State, shall, on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime. The law of Congress, passed in 1793, provides for carrying out this provision in the constitution. When the executive authority of a State shall demand a fugitive from justice, of the executive authority of the State to which the fugitive shall have fled, it becomes the duty of the executive authority of the latter State to surrender up the fugitive, that he may be carried back for trial, provided the requisition shall be accompanied with a copy of a bill of indictment found, or an affidavit, *charging* the person

In re Greenough.

so demanded with having committed a crime, which bill of indict-
ment, or affidavit, must be certified *as authentic* by the executive
making the requisition. Greenough has been arrested upon the
warrant of the executive of this State and delivered into the cus-
tody of the agent appointed by Gov. Bissell to receive him, and he
now seeks to b.; discharged upon *habeas corpus*, upon the ground
that his imprisonment is illegal. It is a well settled principle that
a *habeas corpus* will not lie, where the imprisonment is under *void-
able* process, but only where the process is *void*. If the process
is *void*, it is the same thing, as if there were no process, and then
the party, in effect, is imprisoned without any authority what-
ever, and if in the case before us the executive of this State had
no jurisdiction to issue his warrant, the whole proceeding may
be regarded as *coram non judice, and void*, and Greenough should
be discharged. If a warrant issues from a court of *general juris-
diction*, and is good upon its face, that is all that can be inquired
into. If, however, the warrant is issued by a court having a
*special jurisdiction* conferred by statute, then it is claimed that
upon a *habeas corpus* it is proper to inquire whether the magis-
trate who issued the warrant had the case properly within his
jurisdiction, so as rightfully to exercise the power which had
been conferred upon him. For the purposes of the present
decision, I have no objection to liken the executive of this State
to a magistrate or court of a *special and limited jurisdiction*, and
then see whether *the person of Greenough and the subject matter*
are such as to.bring the case within the provisions of the consti-
tution and the laws of Congress, and these must be the *criteria*
of the jurisdiction of the executive. Greenough was clearly
shown to have been a *fugitive* from justice, provided the complaint
against him is such *a subject matter* as brings his case within the
constitution and the laws of Congress. He had been demanded
by the executive of Illinois of the executive of this State, *as a
fugitive* from justice before the warrant was issued. The inquiry
then arises, is the *subject matter* of the complaint against Green-
ough within the constitution and the laws of Congress? The
statute of Illinois enacts " that if any person or persons shall
knowingly and designedly *by any false pretence or pretences* obtain
from any other person or persons any choses in action, money,

goods, wares, chattels and effects or valuable thing whatever, with an intent to cheat and defraud, upon conviction, he shall be declared a common cheat, and be subjected to fine and imprisonment," etc., etc. The crime charged against Greenough in the bill of indictment, is a violation of this statute, and the precise question now is, shall we treat the crime of obtaining property by false pretences as within the constitution and laws of Congress ? In deciding this case we do not propose to go any further than the case calls for. It is claimed in argument that, the words in the constitution, " treason, felony and other crime," should be confined to crimes of great atrocity, and such as deeply concern the public safety, and are offences at common law ; and that to include the crime with which Greenough is charged, as coming within the constitution, would be an act of despotism. If this case were to be disposed of upon principles of *international law* and the courtesy of nations, treating the States as independent governments, there might be some plausibility, if not soundness, in the proposition that the exercise of the right should be confined to crimes of great atrocity, which deeply concern the public safety. But our constitution contemplates the exercise of a much *broader* power than was ever claimed to exist under the law of nations, independent of treaty stipulations, and it is a power most salutary in its general operation, inasmuch as it serves to discourage the commission of crime by cutting off to some extent the means of escape from punishment, and we trust the exercise of this power has hitherto been as useful in practice as its character is unexceptionable in principle. This provision in the constitution and laws of Congress has received a practical, uniform construction from Maine to Georgia, from an early day in our judicial history, if, indeed, it can be said to admit of construction. It has also been the subject of repeated judicial determination, and he must, I think, be a bold man, who at the present day is ready to hold that the *subject matter* of the complaint against Greenough is not within the constitution and laws of Congress. The language is broad and the crime charged is within its letter, and I apprehend, equally within the reason and spirit of the provision. It has been frequently held that the crime charged need not be a felony in the State where it is

alleged to have been committed, or an offence at common law.

In *Clark's case*, 9 Wend. 218, the charge was against the president of a bank in Rhode Island for a fraud in abstracting the funds of the bank to his own use in violation of the fiduciary trust reposed in him, which was made criminal by a statute of Rhode Island, and this was held to be a crime within the constitution and laws of Congress. So *in re Samuel Adams*, 7 Law Reporter 386, the charge was for obtaining property by *false pretences*, and the prisoner was given up as a fugitive from justice. See also, *Johnson* v. *Riley*, 13 Georgia 97, and Fuller's case, 3 Zabriskie (N. J.) 311.

No case has been cited in the argument in which it was held that the subject matter of the charge against Greenough was not within the constitution and law of Congress, and I am aware of no adjudged case to that effect.

We are not called upon to lay down any general rules as to what particular crimes will come within the constitution, and what will not, and we deem it unwise and a work of supererogation to attempt it. It is far better to let each case be decided as it shall arise. It is quite possible that the general term, " or *other crime*," in the constitution, should be limited by the words which precede it, so to include only crimes of a *similar genus* to those which may be denominated *felonies*, and no one can fail to see that the obtaining of goods by false pretences is a crime nearly allied to theft, and can hardly be regarded as less base, and even in many instances the distinction between them is very subtle. This provision in the constitution relative to fugitives from justice was wisely made a part of the original compact between the States, and it is in the nature of a treaty stipulation, and is eminently calculated to promote harmony and good feeling between them. The well working of our national government is intimately connected with this provision, and its just and salutary execution.

While on the one hand the liberty of the subject should be scrupulously guarded, and all his rights held sacred, yet on the other, we should not forget that it is abhorrent to a proper administration of criminal justice and to the security and welfare of

the different States, that persons who have committed crimes in one State should find an *asylum* from justice in another.

No question has been made as to the regularity of the papers accompanying the requisition of the executive of Illinois, or of their due authentication. The bill was found by a grand jury of the recorders court in the city of Chicago, and is exemplified according to the law of Congress. We have also an exemplified copy of the statute of Illinois, and the affidavit of A. M. Crane, duly authenticated, showing that Greenough is in fact a fugitive from justice from Illinois, and these papers with the executive's requisition were all filed in the executive department of the government of this State, and accompany the executive's warrant for the arrest and surrender of Greenough, and are referred to and made a part of the return upon the *habeas corpus*.

It has been claimed in argument that the facts charged in this indictment do not constitute the offence of obtaining goods by *false pretences* under the statute of Illinois. If this objection was one which went to show that the executive of this State had no jurisdiction to issue his warrant in this particular case, it might with some propriety be claimed that the whole proceeding was *coram non judice*, and the imprisonment illegal. But it has been held, and for one, I think the view a sound one, that if the warrant is duly issued, the court, upon *habeas corpus*, can go behind it, only so far as to entertain a question as to the identity of the alleged fugitive, and so it was held in the case of the *State* v. *Buzine*, 4 Harrington 572, and *State* v. *Schlemn*, 4 Harrington 577, and also in *State* v. *Daniels*, 6 Penn. Law Journal 417, note. See also *Clark's* case, 9 Wend. 218. The court, upon the *habeas corpus*, can not pronounce upon the guilt or innocence of the alleged fugitive. That must be left to the courts of that State, where the crime is alleged to have been committed. If the charge is by way of *affidavit* against the alleged fugitive, and it appears clearly from the whole facts stated in the affidavit taken together, that no crime had been committed, it might with some show of reason be claimed that the subject matter was not within the provisions of the constitution and act of Congress, and therefore as to the jurisdiction of the executive to issue the

warrant, the whole matter would be *non coram judice*. The case in 1 Parker's Criminal Law Rep. 429, *in re Heilbonn*, is of this character. But that is far from being this case. Here the charge against the alleged fugitive is by a bill of indictment found by a grand jury, and whether the bill charges an indictable offence under the statute of Illinois, should be left to the determination of the courts of that State. If it should be determined that the crime of obtaining property *by false pretences* was not set out in the indictment, so as to make a case under their statute, it would not go to the jurisdiction of the court which was empowered to try the crime in question. No one would claim this, and it would be passing strange if the same objection could be urged to show that the *executive* had no jurisdiction to issue his warrant upon such a complaint. The language of the constitution and law of Congress only requires the alleged fugitive *to be charged with* "treason, felony, *or other crime*." We apprehend it would be an abuse of language, not to hold that Greenough was *charged* by this indictment with the crime of obtaining property by *false pretences*, whether it is in fact a case within the Illinois statute or not. It, at all events, gave to the executive, when accompanied with the other papers in the case, a *colorable authority* to issue his warrant, and if this was *colorable* proof to authorize the process, we can not, I think, upon *habeas corpus*, hold that it was a matter *non coram judice*. Errors of judgment can not be reviewed upon *habeas corpus*.

The executive, in one sense acts *ministerially* in issuing his warrant, in another *judicially*. So far as it is his duty to see that the case is a proper one for issuing his warrant, the character of his acts is strictly *judicial*. *In re Prime*, 1 Barb. 351, it was held that even in a case of special jurisdiction, if there was *colorable proof* to authorize the process, it was enough, and that the exercise of the judgment of the magistrate in awarding the process; could not be attacked on *habeas corpus*.

But we think the executive had something more than a *colorable authority* for issuing his warrant, and that the *subject matter* of this indictment was not only *colorable*, but was *really* such as to bring the case within the law of Congress, that not only the crime, as created by the Illinois statute, of obtaining property

20

In re Greenough.

by *false pretences* is within the law of Congress, but that this indictment shows a case in fact and in law within the statute of Illinois. It is claimed in argument that the means used by Greenough, as charged in the indictment, do not constitute *a false and fraudulent pretence*. The pretence, as charged, is the *false* and *fraudulent representation* that a certain *recipe* in writing, combining certain articles, would produce, as a compound, a non-explosive burning-fluid and camphene, of great value. The bill negates *in toto* the truth of the representation, and charges upon Greenough a *scienter* of its falsity, and fraud also, and that the vendee purchased the *recipe* for the sum paid by him as alleged in the bill, relying upon the representations of Greenough. If the means used by Greenough constitute a *false pretence*, I do not understand it is claimed that this is not a case within the Illinois statute. I am not aware what the decisions of the Illinois courts have been on this statute, but I presume they have been, and will be, in unison with those of other courts upon similar statutes. The statute of Illinois is equally broad with the English statute of George IV. and the statutes of other States, and it was designed to protect the weaker part of mankind, and it has been held to be law at the present day, that it is none the less a *false pretence*, although the party imposed upon might by common prudence have avoided the imposition. If he was in fact imposed upon, it is no good reason for the offender to allege, that by use of due diligence or ordinary care the imposition might have been prevented. See 2 East Pleas of Crown 828 ; *Rex* v. *Wickham*, 10 Adol. & E. 34 ; *Rex* v. *Woolley*, 1 Den. C. C. 559 ; *Commonwealth* v. *Henry*, 10 Harris 256.

But suppose the rule to be, that the representation must be calculated to deceive persons of ordinary prudence, it would not alter the result of our argument. It would then be a question of fact for the inquiry of a jury under the circumstances of each particular case. It may in truth be said that every false assertion is not a false pretence, but if it requires something to be done, by the application of tests or otherwise, to ascertain whether the representation is false, it then becomes a *false pretence*. See *Rex* v. *Ball*, 2 Russ. on Crimes 289. In this case, it was matter of experiment whether the ingredients specified in the

*recipe* would produce as a compound " a non-explosive burning-fluid." The falsity of the representation by Greenough was not to be discovered upon ocular inspection of the ingredients, but by the tests of chemical analysis, or actual experiment. The representation to constitute *a false pretence* must be of an existing fact, it is true, yet it is no objection that it has relation to a future event, as where the representation by the persons was that they had betted that a person named would walk a given distance in a given time, and should probably win the bet, and thus procured money towards the bet. See Roscoe Evi. 466 ; *Young's case*, 3 Term 98 ; *Rex* v. *Christley*, 1 Cox C. C. 239. False pretences referring to future transactions are brought within the statute. Greenough is chargeable with the false representation of an existing fact, which would produce a future result ; that is, that certain ingredients, then in a simple state, when combined, would produce a given result.

We apprehend the representation made by Greenough did constitute a *false pretence* within the statute in analogy to repeated decisions. A carrier pretended he had carried certain goods to a consignee, and thereupon demanded and received of the consignor his pay for the carriage, and this was held to be a case within the statute, *Rex* v. *Coleman*, 2 East. P. C. 672. See the cases collected in Archibald C. P. 347–8 and 2 Russ. on Crimes 286, sec. 2 ; *People* v. *Kendall*, 25 Wend. 399 and in *State* v. *Mills*, 17 Me. 211, it was represented by the owner of a horse ; that he was called the *Charley*, and by means of this false representation he procured an exchange of horses ; it was held that it was a *false pretence* within the statute and the indictment was sustained, although the horse, falsely called the *Charley*, was of equal value to the one received in exchange, and as good a horse as the real *Charley* horse.

But suppose for argument sake, we admit it to be fairly a debatable point, whether this indictment states a case within the Illinois statute or not, would that have the effect to render the warrant of the executive *void ?* If so, it must be upon the ground that it showed a want of jurisdiction in the executive to issue his process, and this, I think, no one can well claim. To claim this

would be to claim that the executive must be held *responsible* for a right determination of the question.

On the whole, a majority of the court are clearly of the opinion that Greenough is not illegally restrained of his liberty, and he is therefore remanded into the custody of the agent appointed by the executive of Illinois to receive him, that he may be taken to that State and there dealt with according to law.

POLAND and ALDIS, J. J., dissented.