Thompson v. Higginbotham.

## JAMES THOMPSON v. WM. P. HIGGINBOTHAM.

1. LEGAL NOTICES; *What is Sufficient Publication.* . Where it appears by the return of the sheriff, and the affidavits of the publisher and the foreman of the newspaper, that notice of sale was published in the several issues of the paper as required by law, such publication will be held sufficient, although the affidavit of a party is filed that he examined eight or ten copies of one of said issues and found that a portion of said notice, including the description of the property, was illegible.

2. AFFIDAVIT—*To State Facts.* An affidavit to be used as evidence should state facts positively, and not merely upon belief.

3. —————— *Before Whom Made.* An affidavit may be sworn to before a register of deeds.

4. CONFIRMATION OF SALE; *Regularity of Proceedings.* While it may be irregular for a court to make an order confirming a sale upon the filing of a certain affidavit, yet if the affidavit is filed as required, the substantial rights of the defendant are not prejudiced.

### *Error from Riley District Court.*

JUDGMENT was rendered against *Thompson*, in favor of *Higginbotham*, in September 1874. An execution was issued in March 1875, and on the first of May thereafter lands of

*Thompson* were sold under said execution, by the sheriff of Riley county. Counter motions were made, to confirm, and to set aside this sale. Such motions were heard at the June Term 1875. The district court confirmed the sale, and *Thompson* appeals, and brings the case here on error.

*C. M. Anthony,* for plaintiff in error.

*Green & Hessin,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This is a proceeding to review an order of the district court overruling a motion to set aside, and sustaining a motion to confirm, a sale of real estate. These questions are presented by counsel for plaintiff in error in his brief. First: It is insisted there was a failure to make due publication of the notice of sale. The notice was advertised in the *Clay County Dispatch.* An affidavit of the attorney of the defendant was filed, stating that he had examined eight or ten copies of one of the issues of said paper in which this notice was published, and that a large portion of the notice, including the description of the property, was illegible. On the other hand, the return of the sheriff shows that he caused "public notice of the time and place of sale of said lands and tenements to be given, over thirty days before the day of sale thereof, by advertising in the *Clay County Dispatch,*" etc. The publisher of said paper attaches his affidavit to the return, stating that the notice "was published for five weeks in said newspaper," giving a copy of the notice, and including in his affidavit the issue of the paper referred to in the prior affidavit. A like affidavit was also afterward filed by the foreman of said paper. Upon these facts we think the court properly overruled this objection. Every one knows that it is no uncommon thing to see a few lines in a newspaper blurred, or otherwise rendered illegible. Sometimes the paper as it goes into the press is not entirely smooth; sometimes the ink fails on a portion of the type; and so there

1. Publication of legal notices.

may be in every issue a few copies in which any given notice is illegible. But to hold that thereby the publication has wholly failed, would not be tolerable. It would render titles resting on judicial proceedings altogether too insecure and uncertain. And it must be remembered that in order to make a publication in a newspaper valid, it is not essential that any given number of copies of a single issue should be printed. The law does not say that 100, or 500, or 1000 copies should be struck off, in order to make a valid publication. Doubtless the law contemplates the regular edition of the paper; and if the notice was omitted from all but a single copy or two, the courts might be constrained to interfere. But no such case as that is here presented. All that can be said is, that in a few copies of one issue the notice was partially blurred, and thereby rendered to that extent illegible.

A second proposition is, that defendant had personal property out of which the debt could have been made. The sheriff returned, "No goods." And here again, to overthrow the return, we have only the affidavit of defendant's attorney. This affidavit stated that at the time of the issue and levy of said execution the sheriff who made the levy and the defendant were partners in a livery stable, "in which they held themselves out as joint-owners of a large amount of personal property, one-half of which, or the interest of the defendant in said property, consisting of horses, buggies and harness, which was subject to execution, was more than sufficient to satisfy said judgment-debt as aforesaid, *as affiant believes.*" It also stated that affiant believed that defendant had at all times since the issue of execution personal property subject to execution sufficient to satisfy said judgment. This objection was also overruled. The affidavit proves nothing. It does not state facts, but only affiant's belief. *City of Atchison v. Bartholow,* 4 Kas. 124. Even if defendant was apparently the owner of a half-interest in this stable, the sheriff, his partner, may and doubtless did know the actual facts. He may have known that defendant was only the apparent, and some one else the real owner, or that it was

*2. Affidavits must state facts.*

incumbered to its full value.    At any rate, no mere "belief"
of the defendant's attorney can overthrow the
official return of the officer.    Again, it is objected
that the affidavit of the foreman of the newspaper was taken
before the register of deeds.    This was sufficient.  Gen. Stat.,
p. 598.

3. May be made before register.

Finally, it is contended that at the time of the hearing of
the motion it did not appear that the publication was in the
issues of the paper immediately preceding the day
of sale, and that the court improperly made a
conditional order of confirmation.    The facts are these: The
return of the sheriff showed that he received the execution
March 20th, that the sale was on May 1st, that he gave pub-
lic notice over thirty days before the day of sale by adver-
tising in the *Clay County Dispatch.*    The affidavit of the
publisher attached to the return stated that the notice was
published for five weeks in said newspaper, viz., Nos. 2, 3, 4,
5, and 6, of Vol. 3, 1875, but did not give the dates of issue
of these several numbers.    The court on examination stated
that it did not distinctly appear that these five issues of the
paper were the last prior to the day of sale, and made an
order confirming the sale on the filing of an affidavit that the
advertisement was immediately preceding the sale.    Court
then adjourned, and four days thereafter the required affidavit
was filed.    Conceding the irregularity of such a proceeding,
we do not see how the defendant was prejudiced thereby.
Upon the face of the papers as they now stand, the proceed-
ings in the sale were regular, and confirmation ought to be
made.    If we were to set aside the order of confirmation, as
premature, it would be simply to have it entered at the suc-
ceeding term.    How then is the defendant injured in his sub-
stantial rights?    We see therefore nothing to justify a setting
aside of the order of confirmation, and it will be sustained.

4. Confirmation of sales made by sheriffs.

HORTON, C. J., *and* VALENTINE, J., *concur,* and hold,
that upon the record, the proof of the notice of sale was suffi-
cient at the time of the confirmation, and independently of

the affidavit filed, under the requirement of the court, subsequent to the hearing of the motion to confirm.

Order of confirmation affirmed.