## *In re* LORENZO HACKETT.

*Habeas Corpus. Extent. Delinquent Collector. Jury Trial. Constitutional Law.    Gen. Sts. c. 84, ss. 51, 48.*
*(R. L. s. 418.)*

1. The Supreme Court will not release on *habeas corpus* a *delinquent collector* imprisoned in the county jail on an *extent issued* by a *justice* of the *peace* adjudging him to be in *default* as collector of taxes ;
2. Nor, when the justice in rendering judgment against him added *interest;*
3. Nor, when he denied him a *jury trial;*
4. Nor, when legal *notice* may not have been served on the collector, if he *appeared* and *submitted* to the *jurisdiction* of the justice.
5. Nor, when the town had commenced a civil suit against the collector and his bondsmen and attached property, as this was not pleaded before the justice.
6. The *statute* authorizing a justice of the peace to *issue an extent* against a delinquent collector is *constitutional.*

THE town treasurer of Hartland made his complaint and prayed for an extent on the 3d day of August, 1880 ; and the justice issued notice to the collector on the *same day* to appear before him on the 11th day of August.    But the extent, giving this part of the proceedings, was as follows : " the said treasurer did on the *eleventh day* of August, A. D. 1880, present his petition in writing to Thales B. Winn of Windsor, one of the justices of the peace within and for the county," &c.    As to this, the relator complained as follows :

By said extent, a copy of which is hereto annexed, the said justice *certifies* that a complaint was made to him by the town treasurer of said Hartland, on the 11th day of August, A. D. 1880, in writing, and that he summoned your complainant to appear before him, at said Hartland, on said 11th day of August, 1880, to answer to said complaint.

The relator also complained that he was denied a jury trial ; also an appeal ;* that the justice added interest to the sum due ; and that the town had commenced a suit against him and his bondsmen, and had attached their property.

---

* An appeal is now allowed by the act of 1880, No. 86, s. 2, R. L. s. 419.—REP.

*French & Southgate*, for the relator.

The statute, Gen. Sts. c. 84, ss. 50, 51, is unconstitutional. *Griswold* v. *Rutland*, 23 Vt. 324. The law is in violation of the 12th Art. of the Bill of Rights which guarantees a trial by jury. The 31st sec. of the Const. secures the same right. The question of trial by jury was considered by this court in *Plimpton* v. *Somerset*, 33 Vt. 283; *Lincoln* v. *Smith*, 27 Vt. 328; 41 Vt. 504. Adding interest rendered the extent void. Acts of 1870, No. 44, p. 83. Taking the body of the relator on the extent satisfied the judgment. *Foster* v. *Collamer*, 10 Vt. 466; *Willard* v. *Lull*, 20 Vt. 373, 377; 2 East, 243; 7 Conn. 274; 9 Conn. 128. The extent is void, because the relator did not have legal notice to appear before the justice. *Wilson* v. *Fleming*, 16 Vt. 649.

*Gilbert A. Davis* and *William E. Johnson*, for the town of Hartland.

The justice had jurisdiction. His judgment is conclusive. In re *Halsey*, 22 Vt. 363; In re *Tracy*, 25 Vt. 93; *Hathaway* v. *Holmes*, 1 Vt. 417, 418; *People* v. *Cassels*, 5 Hill, 164; *People* v. *Goodhue*, 2 Johns. Ch. 198; *Burpee* v. *People*, 4 Barb. 31; In re *Powers*, 25 Vt. 271; *Clark* v. *Lathrop et al.* 33 Vt. 140.

The justice correctly denied the appeal. *Griswold* v. *Rutland*, 23 Vt. 324. Interest was properly added; 3 Parsons Cont. 104; 48 Vt. 654.

The opinion of the court was delivered by

Ross, J. The office and duty of the court on this writ of *habeas corpus* is to inquire into the legality of the commitment and detention of the relator in the common jail at Woodstock. From the return of the jailor thereon it appears that he was committed and is there detained on an extent issued by a justice of the peace on a judgment rendered by him against the relator, adjudging the relator to be in default, as collector of the taxes for the town of Hartland. The proceedings before the justice are in accordance with the provisions of the statute and regular in form, with three exceptions as claimed by the relator, hereinafter noticed. It will be helpful in disposing of the objections to

the form and regularity of the proceedings before the justice, to notice briefly some points which have already been decided by this court. *Habeas corpus* will not lie when the imprisonment is under merely voidable process, but only where the judgment or process is void. In re *Greenough*, 31 Vt. 279; *Kellogg* ex parte, 6 Vt. 509. An irregularity accruing before judgment should ordinarily be of a character to render the judgment void to entitle to relief on *habeas corpus*. *Tracy* ex parte, 25 Vt. 93. Matters of abatement, or the refusal of the magistrate to proceed in the cause, do not furnish ground for relief under this writ. In re *Hasley*, 22 Vt. 363. In this last case the relator was arrested on mesne process, an affidavit having been filed for that purpose with the magistrate agreeably to the statute. By the statute authorizing the writ to issue as a *capias*, the relator when arrested, on giving notice, was entitled to be heard by the magistrate in regard to his right to be discharged from arrest. The magistrate refused to hear him. Such refusal was adjudged to furnish no ground for relief on *habeas corpus*. On these adjudications the pendency of the prior civil suit, if it had been pleaded before the justice of the peace,—as it was not,—being only matter in abatement, furnishes no ground for relief, nor does the want of legal notice, as shown by the extent, inasmuch as the relator appeared and submitted to the jurisdiction of the justice. He thereby waived his right to insist upon this objection. Besides, the certified copy of the record of the justice shows that he was given legal notice. If the justice improperly refused the relator a trial by jury, it was no more than was done by the justice, in re *Hasley*, *supra*, and did not render the adjudication void. Possibly as suggested in re *Hasley*, he would be entitled to a writ of *mandamus* commanding the justice to accord him a trial by jury. The right to a jury trial before a justice of the peace is given only where the suit is *inter partes*. The extent proceedings are not *inter partes*, but rather in the nature of criminal proceedings. The statute, prescribing the proceedings, does not accord the right. The reasoning of the court in *Griswold* v. *Rutland*, 23 Vt. 324, applies forcibly, showing that the right of trial by jury was not intended, nor given by the statute.

If the justice erroneously included interest on the sum in which the relator was found in default, it was, at most, an irregularity or error in his adjudication.   It did not touch the question of his jurisdiction over the subject-matter, nor render his adjudication thereon void.   Possibly, if erroneously included, the relator might obtain relief therefrom by *certiorari*, and possibly by *habeas corpus* after he had discharged the legal portion of the judgment. Personally, I think, by "arrearages of taxes" in the statute is meant whatever is legally due thereon from the collector, and that interest was properly included after the demand upon and refusal by the relator to pay over the sum in arrear.   It was held in *Tunbridge* v. *Smith*, 48 Vt. 648, that interest was properly recoverable of a collector after he was in default in paying over taxes which he had collected.   But the court do not express any opinion upon whether interest was properly or improperly included ; but place the decision on this objection upon the ground that it furnishes no ground for relief, if erroneously included, so long as the sum for which the relator was adjudged to be in arrear of the taxes in his hands, remains unpaid.   This brings us to a consideration of the constitutionality of the statutes under which the proceedings were had.   If constitutional, they gave the justice jurisdiction of the subject-matter, the person of the relator and of the process, a complete jurisdiction.   The legislature is clothed with plenary power to enact laws, except so far as restrained by the constitution.   *Bennington* v. *Park et al.*, 50 Vt. 178.   Every presumption is to be made, by the court, in favor of the constitutionality of the enactments of the legislature, and they are not to be adjudged unconstitutional except upon clear and irrefragable evidence that they infringe the paramount law of the land.   The provisions of the constitution claimed to be infringed by ss. 50 and 51, c. 84, Gen. Sts., under which the extent proceedings were authorized and were had, are those relating to the right of trial by jury, and are as follows :

Bill of Rights, article 12 : "That when any issue of fact, proper for the cognizance of a jury, is joined in a court of law, the parties have a right to trial by jury, which ought to be held sacred."

Constitution s. 31 : "Trials of issues, proper for the cogni-

zance of a jury, in the Supreme and County Courts, shall be by jury, except when parties otherwise agree."

These provisions were contemporaneosly adopted, and, considered together, accord the right of trial by jury only in the Supreme and County Courts, and only in trials in these courts is the common-law jury of twelve men used. The common-law jury is meant when mentioned in these provisions of the constitution. *Plimpton* v. *Somerset*, 33 Vt. 283. The jury of six men, authorized in trials before a justice of the peace, does not accord the right secured by the constitution. These provisions of the constitution are satisfied, if a party, by appeal from the judgment of a justice, can obtain a trial by a common-law jury in the County Court. Hence the constitutionality of these sections of the statute was properly raised in *Griswold* v. *Rutland, supra*, in which it was held that no appeal lay from the judgment of the justice of the peace, although it does not appear to have been discovered by counsel, nor considered by the court. The same is true of *Clark* v. *Lathrop et al.*, 33 Vt. 140. It is somewhat remarkable, if well founded, that the question of the constitutionality of the statute did not suggest itself to the counsel or the court in either of those cases. In *Plimpton* v. *Somerset, supra*, in which these constitutional provisions were under consideration, it is said: " The general rule of construction in reference to this provision of the constitution is, that any act which destroys or materially impairs the right of trial by jury according to the course of common law in cases proper for the cognizance of a jury is unconstitutional." Cooley, in his work on Constitutional Limitations, p. 410, speaking on this subject, says : " The constitutional provisions do not extend the right ; they only secure it in cases in which it was a matter of right before." Again : " It is undoubtedly competent to create new tribunals without commonl-aw powers, and to authorize them to proceed without a jury ; but a change in the form of action will not authorize submitting common-law rights to a tribunal in which no jury is allowed." Taxes are the life-blood of government. Unless duly assessed, collected and paid over to the proper disbursing officer, its functions are paralyzed, and disintegration and anarchy are imminent.

Hence the statutory provisions for the due assessment, collection and enforcement of payment from the collector to the treasurer have always provided for speedy, summary, and generally final proceedings. The basis of taxation and methods of procedure in assessment and collections are almost universally statutory, and differ largely in different States and nations. The entire body of our law on this subject is statutory.

Our form of government and the circumstances of the people are so different from the government of England, and the condition of its people, that it would be unreasonable to expect that the common law would be applicable to us. In fact, there is not in England, and never has been, any common law on this subject, in the sense in which the words " common law " are ordinarily used. The levying of taxes for the support of the government, has from very early time been by act of parliament, except when occasionally usurped by the crown. Such usurpations have always been among the prominent occasions of internal strife, and have always, in the end, been decided in favor of the right of parliament to levy and assess the taxes. The history and sources of the king's revenues including taxes, as set forth 1 Bl. Com. chapter 8, show great changes from time to time, and that at the time this country declared itself independent of the mother country, the customary taxes then imposed, were the annual land tax, malt-tax, and the perpetual taxes of customs and internal revenue. The management and control of all these, except so far as provided for in special acts of parliament, and the other sources of the king's revenue, were in a division of the Court of Exchequer, over which the lord treasurer presided. Its jurisdiction over these matters gave name to the court. Bacon's Abridg. T. Ct. of Ex.; 3 Bl. Com. 56. The enforcement of the collection and payment into the treasury of taxes, customs, &c., whether in the Court of Exchequer, or by commissioners or justices of the peace, under acts of parliament, were always *ex necessitate*, by summary proceedings without the intervention of a jury. 3 Bl. Com., chap. 20, entitled " Summary Convictions." It is there said, " Of this summary nature are all trials of offence and frauds contrary to the laws of the *excise* and other branches of the *reve-*

*nue;* which are to be inquired into and determined by the commissioners of the respective departments or by justices of the peace in the country; officers, who are all of them appointed and removable at the discretion of the crown." Hence issues of fact in such matters, in England, at the time of the revolution, were not tried by a jury, and were not understood by the framers of the constitution as being "proper for the cognizance of a jury," and are not included within the provisions of the constitution which secure the right of trial by jury.

The result is the commitment and detention of the relator in jail is adjudged legal, and he is remanded to the custody of the jailor within the jail.