ALVIN L. LEIGH, APPELLEE, V. HENRY S. GREEN, APPEL-
LANT.

FILED APRIL 23, 1902.   No. 9,838.

Commissioner's opinion, Department No. 2.

1. **Affidavit:** KNOWLEDGE: BELIEF. It seems that, so long as a wit-
ness is willing to and does testify to a fact positively, and not
merely to his belief therein, his affidavit, in which it is posi-
tively stated, does not become an affidavit upon information
and belief by the addition of a further statement that he
verily believes all the facts set forth to be true.

2. **Showing:** AFFIDAVIT: INFORMATION AND BELIEF. Where a show-
ing by affidavit is required as to facts which are necessarily
matters of information and belief, an affidavit on information
and belief is sufficient.

3. **Published Notice:** DESCRIPTION. A description of land in a pub-
lished notice is sufficient where the context of the notice shows
clearly that land in this state is referred to, and there is but
one tract in the state answering such description, although it
likewise describes another tract situated in another state.

4. **Owner:** INCUMBRANCER: LIENHOLDER. The term "owner" in sec-
tion 4, article 5, chapter 77, Compiled Statutes, refers to persons
having estates in the land in question, and not to incumbrancers
and lienholders.

5. **Owner of Land:** PHRASE "NOT KNOWN": DILIGENT INQUIRY. It
seems that the owner of land is "not known," within the mean-
ing of said section, when the holder of a tax-certificate is
unable, by reasonable diligence and inquiry in the neighbor-
hood of the land in question, to learn the whereabouts of the
person or persons appearing to have estates therein or when
he is unable to ascertain who have such estates.

6. **Foreclosure:** LAND A PARTY: AFFIDAVIT: ALLEGATION. When the
owner of the land is not known to the holder of a tax-certifi-
cate and can not be found upon reasonable inquiry, the holder
of such certificate may make the land a party to foreclosure
proceedings; and in such case allegations in the petition and
an affidavit for service by publication on information and belief,
to the effect that the owner is unknown, are sufficient as
against collateral attack.

7. ———: ———: ———: ———: PARTIES DEFENDANT: PERSONS CLAIM-
ING INTEREST IN LAND: COLLATERAL ATTACK. Whether or not,
in such case, the plaintiff may join as defendants persons claim-
ing some interest in the land, if the land is properly made a

party, such joinder could at most be an irregularity only, and would not affect the validity of the proceedings when attacked collaterally.

8. **Land a Party: Jurisdiction: Notice: Foreclosure: Decree: Sale: New and Independent Title: Bar.** If the land is properly made a party, and jurisdiction over it is duly acquired by publication of notice, a sale under decree of foreclosure creates a new and independent title, and bars all pre-existing interests or liens.

9. **Proceedings in Rem: Due Process of Law.** Sections 4 and 6, article 5, chapter 77, Compiled Statutes, providing for foreclosure of tax liens by proceedings *in rem* to which the land alone is made a party, and for cutting out all pre-existing rights or liens by sale under decree therein, are not in conflict with the state or federal constitutions, as depriving persons of property without due process of law.

Appeal from the district court for Knox county. Heard below before Robinson, J. Rehearing of case reported in 62 Nebr., 344. *Judgment of reversal adhered to.*

This case was taken to the supreme court of the United States, on writ of error issued by Melville W. Fuller, Chief Justice, July 22, 1902. The federal question involved is a claim on behalf of plaintiff in error (appellee in this court) that sections 4 and 6 of article 5 of chapter 77, Compiled Statutes, is in conflict with the fourteenth amendment to the constitution of the United States.—Reporter.

*W. R. Green, James McCabe, Reed & Gross* and *Smyth & Smith,* for appellant.

*C. C. McNish, Anderson & Keefe, Woolworth & McHugh, J. C. Crawford* and *A. R. Oleson, contra.*

Pound, C.

The issues of fact and law involved in this appeal are sufficiently stated in the former opinion. Many of the conclusions reached in that opinion are acquiesced in by the parties, and have not been reargued. Four propositions, however, are insisted upon by counsel for appellee as hav-

ing been overlooked or wrongly determined, and require consideration. These propositions are whether an affidavit for service by publication, made upon information and belief only, is sufficient; whether the description of the land in the published notice was sufficient to give the court jurisdiction in the tax foreclosure proceedings in question; whether, under a proper construction of sections 4 and 6, article 5, chapter 77, Compiled Statutes, foreclosure of a tax lien by suit against the land itself will bar lienholders not made parties to the proceeding and not served with process; and, finally, whether, if such is the proper construction of said sections, they are constitutional and valid, in view of the constitutional provisions, both federal and state, against deprivation of property without due process of law.

With respect to the first question, we may remark that it is by no means clear that the affidavit in question is to be treated as one upon information and belief. Examination of the many cases in which affidavits have been held insufficient because made upon information and belief only, discloses that in such cases the affiant stated that he believed so and so (*Armstrong v. Sanford,* 7 Minn., 34; *Thompson v. Higginbotham,* 18 Kan., 42) ; or that he had reason to believe and did believe it (*Clarke v. Nebraska Nat. Bank,* 57 Nebr., 314; *Ex parte Spears,* 88 Cal., 640, 26 Pac. Rep., 608; *Ex parte Morgan,* 10 Fed. Rep., 298) ; or that he was informed and believed so and so (*Ex parte Rowland,* 35 Tex. Cr. Rep., 108, 31 S. W. Rep., 651) ; or that, on his "best knowledge, information and belief," certain facts were true (*Ex parte Lane,* 6 Fed. Rep., 34) ; or that certain statements in a pleading were true except as to statements on information and belief and that such statements were believed to be true. *City of Atchison v. Bartholow,* 4 Kan., 124; *Attorney General v. Bank of Chenango,* Hopk. Ch. [N. Y.], 671. In another class of cases, more nearly like the one at bar, the affiant states that certain facts are true, as he believes, or as he is informed and believes. *State v. County Commissioners,* 49 Nebr., 51;

*State v. Mayor,* 4 Nebr., 260; *Clarke v. Nebraska Nat. Bank,* 57 Nebr., 314; *Mowry v. Sanborn,* 65 N. Y., 581. The case at bar differs from all of these. The statements in the affidavit are made positively, but at the end, after stating directly that the owner of the land in question is unknown, there is the further statement "all of which I verily believe to be true." It will be seen that whereas, in the cases cited, the affiant did not make any positive statements of fact, but merely stated that he believed, or was informed and believed that certain facts existed, in this case the statements are made positively and directly, and there is merely an additional statement that affiant believes them to be true. Does this further statement qualify or detract from what goes before? In *Webster v. Daniel,* 47 Ark., 131, 139, 14 S. W. Rep., 550, the affidavit stated "that said Peter Webster has left the county of his residence to avoid the service of a summons as shown by the return of a constable to the writ of summons issued herein." The court held that this was not an affidavit as to what the return showed, nor to belief based on information derived from the return, but was positive, and referred to the return as evidence only. In *Re Keller,* 36 Fed. Rep., 681, 685, a complaint in extradition proceedings stated an offense positively and directly. A statement was added to the effect that the complainant verily believed the facts stated to be true. The court said: "If it is conceded that this court can construe this pleading and reject it, still I think it is not faulty. It is a statement of a fact which the deponent, in testifying to, verily believes to be true. A man swears to what he believes to be true; and when he states a fact under oath, he says he verily believes it to be true. I do not think it is faulty on that account. I think this affidavit is sufficient." In *Pratt v. Stevens,* 94 N. Y., 387, the court said: "The addition of the words 'to deponent's best knowledge, information and belief,' does not modify or detract from the words previously employed. The general rule is that an oath taken before a competent officer merely verifies truth of the facts stated,

according to the best knowledge, information and belief of the affiant.  The positive affirmation of the fact sworn to in an affidavit is in most cases supposed and understood to be according to the best knowledge, information and belief of the witness." "The true criterion would seem to lie in the willingness of the witness to make a positive statement.  If his information and knowledge are such that he will make a positive statement of the fact in question upon oath, his evidence is to be received, though the weight to be given it might be small by reason of the nature and extent of the information and knowledge from which he testifies.  On the other hand, if he has a belief or opinion, but is not so completely satisfied of the fact that he will testify to it directly, but merely states his belief, then the bare statement of what he believes, but will not state positively upon his oath, is not to be received, unless the case is one where an affidavit as to his belief only is required.  In the case at bar, there is a direct and positive statement that the owner is unknown.  The further statement that affiant believes it to be true does not detract therefrom.  He not only believes it, he is willing to testify to it positively.  This is much more than a mere statement of his belief.  But construing the affidavit with counsel for appellee, and giving to the words with which it closes all the effect claimed for them, we agree to the conclusion reached at the former hearing, and think it sufficient.  Where a showing by affidavit is required as to facts which are necessarily matters of information and belief, an affidavit on information and belief ought to suffice.  The statute should receive a construction in accordance with common sense.  It was not intended to require perjury, and, as it requires affidavit to matters involving legal opinion and conclusions of law and fact, it must contemplate that such affidavit will be made upon the only basis on which such opinions and conclusions can be reached. As ALBERT, C., said in the former opinion, with reference to the required showing that service can not be made in the state: "In the very nature of things, upon this point at least, the affiant,

whatever the wording of the affidavit, can never have posi-
tive knowledge.  *  *  *  To expressly state that which,
in the absence of such statement, would be necessarily
implied, affects only the form and not the sub-
stance of the affidavit." This is no less true of the
statement that the owner of the land in contro-
versy is not known. In a trial where numerous
witnesses are successively examined the several facts and
circumstances may be made to appear by competent
proof, and the trier of fact may draw the proper inference
therefrom. But where one man is to make affidavit to the
conclusion, he must in fact state the belief which the in-
formation in his possession gives rise to, whether he ex-
pressly says so or not; otherwise the required affidavit
could never be made. In *Colton v. Rupert*, 60 Mich., 318,
326, 27 N. W. Rep., 520, the court say: "In such case an
affidavit upon information and belief is all that could rea-
sonably be required. To require that such proof should be
established by such evidence as would preclude all reason-
able doubt, or of such character and weight as would pre-
clude a possibility of error, would deprive this provision of
the statute, in a large majority of cases, of any efficacy,
and result in a failure of the remedy designed to be af-
forded by the law. The law itself is based upon the neces-
sity of the case, in order to enable parties to reach and
deal with property within the jurisdiction of the court."
A similar observation is made in *Snell v. Meservy*, 91 Ia.,
322, 59 N. W. Rep., 32, and the great weight of authority
sustains this view. See, also, *Trew v. Gaskill*, 10 Ind.,
265; *Bonsell v. Bonsell*, 41 Ind., 476.

We do not think the cases of *Clarke v. Nebraska Nat.
Bank*, 57 Nebr., 314, and *Mowry v. Sanborn*, 65 N. Y.,
581, conflict in any way with the foregoing proposition.
In *Clarke v. Nebraska . Nat. Bank* the statute re-
quired proof of certain facts to the satisfaction of the
judge. These facts were capable of positive proof, directly
or by circumstances. There was no requirement that the
proof be by affidavit solely. The statute expressly stated

that it might be made by affidavit of the judgment creditor "or otherwise." It was the clear duty of the moving party in that case to furnish proof. If he could not do so by his own positive affidavit, he might do so by some other means. To furnish an affidavit to conclusions which proof might establish, stating them not as facts, but as matters of belief and opinion, was not enough. The distinction between such a case and the one at bar is manifest. Nor is *Mowry v. Sanborn, supra,* in point. There the affidavit was not as to non-residence generally, but as to the exact place where persons, whose residence was known, in fact resided. Such known fact was capable of positive proof.

It is next contended that the land was not made a party to the foreclosure suit, and that the court did not get jurisdiction over it, because it was insufficiently described. In the title to the petition and in the published notice it is described as the "northwest quarter of section 27, township 31, range 3, west sixth principal meridian," without stating in what county or state, nor whether the township in question is north or south of the base line. So far as the petition is concerned, however, the objection is clearly untenable for the reason that in the body of the pleading it is expressly stated that the land lies in Knox county, Nebraska. We think the notice sufficient also. The notice sets forth that plaintiff claims to have purchased said land for taxes at a tax sale held in Knox county, Nebraska. Thus the context shows that land in this state is referred to, not merely by the venue of the proceedings, but by the nature of plaintiff's claim. Although the description is equally applicable to another tract situated in the state of Kansas, there is but one tract in this state to which it can possibly refer. In *Fanning v. Krapfl,* 68 Ia., 244, 26 N. W. Rep., 133, a published notice was directed to "P. T. B. Hopkins, wife of John C. Hopkins." Said defendant's true name was "T. P. B. Hopkins." The court said: "The notice should describe the party to whom it is directed with such certainty as that neither he, nor other persons acquainted

with or knowing him could reasonably be misled by it as to the person for whom it was intended. * * * If the notice had come to her attention, she would have learned from it that it was intended for the wife of John C. Hopkins, which was the name of her own husband, and that it related to an interest of which W. R. I. Hopkins, who held the property now in question in trust for her, was trustee. She could hardly have failed to learn from it that she was the identical person for whom it was intended, and she could not reasonably have been misled by the transposition of the initial letters of the Christian name which occurred in it." So in this case. No one who read the notice could reasonably suppose that it referred, or might refer, to lands in Kansas. There was a tract answering the description in Knox county, Nebraska, and the notice set forth that a lien was asserted against the tract by virtue of a tax sale held in said Knox county. No one could well be misled by the omission of the word "north" under such circumstances. The same kind of description has been passed on several times where contained in deeds, and has been upheld always when there was but one tract answering the description in the state, if the context or circumstances indicated the state sufficiently. *Long v. Wagoner,* 47 Mo., 178; *Beal v. Blair,* 33 Ia., 318; *Butler v. Davis,* 5 Nebr., 521. It may be admitted that the question to be determined in these cases was somewhat different. But the reasons assigned seem to us to be applicable. If the whole notice makes it clear what lands are referred to, we think it is enough. This holding does not conflict with the case of *Cohen v. Trowbridge,* 6 Kan., 385. In that case a notice failing to state whether the range in which the tract attached lay was east or west of the meridian was held invalid. But there are two ranges numbered 18 in Kansas, and hence two tracts in that state were within the terms of the notice. The true rule is announced in *Fanning v. Krapfl, supra.* A great many titles depend upon foreclosure proceedings based on service by publication. If no reasonable

person can be misled by a description, we ought not to imperil titles by criticising it over minutely.

Coming now to the construction of sections 4 and 6, article 5, chapter 77, Compiled Statutes, we are satisfied that the former opinion is in every way a correct exposition thereof, and that it should be adhered to. That the term "owner," as used in said section 4, refers to persons having estates in the land and not to incumbrancers and lien-holders, is made very plain. In what cases it may be said that the owner is "not known" within the meaning of said section, is a question of some difficulty. Is it meant that the condition of the title must be such that with ordinary diligence one who investigates can not pronounce in whom it lies? Or is it meant that the person in whom the title appears to be can not be identified, located, or found? If the latter, to whom must he be unknown—the plaintiff or the community generally in which the land lies? Or must he be absolutely unknown? As we have in this case a collateral attack on the decree of foreclosure, it may not be necessary to go deeply into the questions to which this apparently simple phrase gives rise. We think that the owner of land is "not known" within the meaning of said section, whenever the holder of a tax certificate is unable by reasonable diligence and inquiry in the neighborhood of the land in question to ascertain the whereabouts of the person or persons appearing to have legal estates therein, or to ascertain who have such estates. In the latter case he can not know whom to make parties; in the former, he can not know how to serve them, since he does not know, nor can he ascertain, whether they are residents or non-residents of the state, and, if residents, where they are to be reached. Hence, when the owner of the land is not known to the holder of a tax certificate in either sense, and can not be found upon reasonable inquiry, the holder of such certificate may make the land a party to foreclosure proceedings. In such case, for reasons already set forth, allegations in the petition and an affidavit for service by publication on information and belief, to the effect that

the owner is unknown are sufficient against collateral attack. Van Fleet, Collateral Attack, secs. 245, 247.

The plaintiff in the tax-foreclosure suit joined one Root as a party defendant, alleging that he claimed some interest in the land; and we have next to consider the effect of this joinder. It has been seen that all persons having interests in the land in controversy are not for that reason "owners," within the meaning of the statute; hence Root might have had an interest by way of lien or incumbrance, and yet the allegation that the owner was unknown might have been entirely true. So long as the land was properly made a party, it was unnecessary to join parties who merely claimed interests short of ownership. They would be cut out by decree and sale without being joined, under express provisions of the statute. We do not think that the nature of the proceeding was changed in any way by joining Root. The land was properly made a party and all necessary steps to get it before the court were duly had. Whether the joinder of Root was irregular we need not decide. The important point here is that the land was sued. If the plaintiff sued another defendant also, the propriety of such course is not to be reviewed collaterally. It may be remarked, however, that parties claiming interests in the land are often joined in cases like the one under consideration in other jurisdictions, and no question appears to have been made but that the proceedings are nevertheless *in rem*, and bind others claiming interests in the property, who have not been joined. *Pritchard v. Madren,* 24 Kan., 486; *Hunger v. Barlow,* 39 Ia., 539; *Nash v. Church,* 10 Wis., *303.

Upon the question as to the effect of making the land a party and of sale under decree against the land, we are entirely satisfied with the construction put upon the statute in the former opinion. The provisions of the statute are express that, "in case the land itself is made defendant in the suit, the deed shall be an absolute bar against all persons, unless the court proceedings are void for want of jurisdiction; the object and intent of this section being to

create a new and independent title, by virtue of the sale, entirely unconnected with all prior titles." Compiled Statutes, ch. 77, art. 5, sec. 6. There is every reason for construing this section to mean what it says. As remarked by ALBERT, C., in the former opinion, the procedure for enforcing tax liens is a part of the revenue system of the state. We can not assent to the argument of counsel that, after the taxes have been sold to a private purchaser, the state loses all concern with the matter, and it becomes purely a case of enforcing an ordinary lien, to be governed by the ordinary principles of private law. The state must provide some means for speedy collection, if it expects to sell its taxes. If the necessities of public affairs compel the state to sell taxes in order to get in revenues quickly, they also require that every proper inducement be held out to tax-purchasers in order that taxes be readily saleable. The provision for foreclosure by the purchaser is much less drastic than the common method of conveying the land outright to the tax-purchaser by an administrative act, without any judicial inquiry whatever. Moreover, there is nothing novel or peculiar about the proceeding. It is known to the laws of many states, and has been given the full force and effect intended by the statutes. *Pritchard v. Madren,* 24 Kan., 486; *Chauncey v. Wass,* 35 Minn., 1, 30 N. W. Rep., 826; *Ball v. Ridge Copper Co.,* 118 Mich., 7, 76 N. W. Rep., 130; Freeman, Judgments, sec. 607. We agree to the conclusion reached at the former hearing that, if the land was properly made a party and jurisdiction over it was duly acquired by publication of notice, a sale under decree of foreclosure created a new and independent title, and barred all pre-existing interests or liens.

The statute expressly awards to the purchaser at tax sale a remedy by suit against the land itself, available whenever the owner is not known, whereby all persons claiming interests in the land may be barred completely on sale under decree of foreclosure. In so far as they give this remedy to the purchaser, are sections 4 and 6, article 5, chapter 77, Compiled Statutes, in conflict with provisions

of the state and federal constitutions against depriving persons of property without due process of law? We think not. The power of the state to levy taxes obviously carries with it the power to collect them, and to provide all means necessary or appropriate to insure and enforce their collection. "What method shall be devised for the collection of a tax, the legislature must determine, subject only to such rules, limitations, and restraints as the constitution of the state may have imposed. Very summary methods are sanctioned by practice and precedent." Cooley, Constitutional Limitations, *521, 6th ed., 645. Sale and issuance of a tax deed creating a new title and cutting off liens and incumbrances (*Bagley v. Castile,* 42 Ark., 77; *Chambers v. People,* 113 Ill., 509); levy and sale by the tax-collector (*Springer v. United States,* 102 U. S., 586; *Sawyer v. Dooley,* 21 Nev., 390, 32 Pac. Rep., 437); issuance of a warrant by the treasurer, and levy thereunder (*Weimer v. Bunbury,* 30 Mich., 201); making taxes a paramount lien, cutting out prior claims and incumbrances (*Lydecker v. Palisade Land Co.,* 33 N. J. Eq., 415); imprisoning a delinquent collector on a writ of extent issued summarily (*In re Hackett,* 53 Vt., 354); issuance of execution by the tax-collector (*State v. Allen,* 2 McCord [S. Car.], *55); seizure and forfeiture of the property taxed (*Henderson's Distilled Spirits,* 14 Wall. [U. S.], 44),—are some of the summary modes of collection which have been upheld. Also, in *Murray v. Hoboken Land & Improvement Co.,* 18 How. [U. S.], 272, a statute authorizing a warrant to issue against a public debtor for seizure of his property, upon an ascertainment of the amount due by administrative officers, was held constitutional. As was said in *Re Hackett, supra:* "Taxes are the life-blood of government. Unless duly assessed, collected, and paid over to the proper disbursing officer, its functions are paralyzed, and disintegration and anarchy are imminent." In consequence, so long as the tax is valid, all manner of summary proceedings to collect it have always been sanctioned, the statute providing for assessment and levy being held

to afford due and sufficient notice. Counsel admit this,
but contend that summary methods can be employed only
by the state itself, acting directly. They say: "The sum-
mary method by which a party may be divested of his in-
terest in the lands without judicial procedure can be justi-
fied only when he is withholding moneys belonging to the
state; beyond that the principle can not go." Again: "The
foreclosure of the lien of a tax certificate by judicial pro-
ceeding by a private party to realize the amount due under
his lien is a judicial proceeding simply, in which the rights
and powers of the sovereignty are not involved." We can
not agree. The state must have its revenues. There is no
summary administrative proceeding for collection of taxes
upon land available under our statutes. Foreclosure is
the sole method of enforcement. But the state can not
wait the slow process of foreclosure and sale. Selling the
tax and authorizing the purchaser to collect it is a method
of collection almost as old as taxation itself. Under our
statute the state sells to a purchaser and gives to him the
same remedy it would have had had it chosen or been able
to wait. It is obvious that purchasers might not buy un-
less given some sure and speedy remedy. The interests of
the state and its necessities demand that great induce-
ments be held out to tax purchasers. Otherwise the state
would not get in its revenues. Hence we see no reason why
a remedy which the state may employ directly to collect its
revenues may not be awarded to an assignee to whom the
state has been obliged to sell its claim in order to realize
promptly thereon. The right of the state to exercise other
powers through individuals is undoubted. In the
*Slaughter-House Cases,* 16 Wall. [U. S.], 36, 64, Miller,
J., said: "If this statute had imposed on the city of New
Orleans precisely the same duties, accompanied by the
same privileges, which it has on the corporation which it
created, it is believed that no question would have been
raised as to its constitutionality. In that case the effect
on the butchers in pursuit of their occupation and on the
public would be the same as it is now. Why can not the

legislature confer the same powers on another corporation, created for a lawful and useful public object, that it can on the municipal corporation already existing?" The exercise of the right of eminent domain by corporations is an every-day occurrence, and section 39, article 2, chapter 93a, Compiled Statutes, allows it to private individuals in furtherance of works of irrigation. If the state could authorize the county to proceed by suit against the land in case the delinquent owner was unknown, it could equally authorize a private purchaser of the taxes to maintain such proceeding, and for the same reasons.

We should not forget, however, that the proceeding in question is not summary in the sense in which that term may be applied to the usual run of methods of collecting taxes. It is not as if the purchaser were authorized to advertise and sell the land, or to have the sheriff do so on request. He must wait the expiration of a long period of redemption. He must then bring a suit, make all proper parties if the owners are known, publish due notice upon showing by affidavit if they are not, make proper proofs of the levy and sale and the amount due to a court in a proceeding in which every person interested may intervene, and then, after decree of foreclosure, await the due course of judicial sale and confirmation. The opportunities afforded to all persons affected to make known their claims are ample. They have no right to lie by and suffer the taxes to get many years in arrear, without exercising any diligence to protect their claims.

We recommend that the former judgment be adhered to.

BARNES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former judgment is adhered to.

REVERSED AND REMANDED.