### WALL et al. v. FOOTE.

(District Court, S. D. Alabama, S. D. June 6, 1925.)

No. 724.

Quieting title ⨺31—Under Alabama statute, unknown claimants may be brought in as defendants as a class by publication.

Under Code Ala. 1907, § 5443 et seq., providing for a suit in equity by any person in possession of and claiming to own lands to quiet his title and "clear up all doubts or disputes concerning the same," such suit is governed by the general rules of practice of courts of equity of the state, and where the names of adverse claimants are unknown and after diligent inquiry their names and residence cannot be ascertained by complainant, the court has power to direct service by publication on defendants designated as a class, as the heirs and representatives of a named person deceased.

At Law. Action by T. H. Wall and others against R. A. Foote. Judgment for plaintiffs.

Harry T. Smith & Caffey and J. Blocker Thornton, all of Mobile, Ala., for plaintiffs.

Smiths, Young, Leigh & Johnston, of Mobile, Ala., and T. Jesse Bedsole of Grove Hill, Ala., for defendant.

ERVIN, District Judge. This is a statutory form of ejectment under the provisions of the Code of Alabama, seeking to recover lands described in the complaint. The government issued a patent in 1843 to one Lemuel Butler. The title of the plaintiffs began with a tax sale against Butler in 1866, and comes on down through mesne conveyances to the plaintiffs, who on October 25, 1909, filed in the chancery court of Clark county, Ala., a bill to quiet title under the provisions of chapter 127 in the Code of Alabama of 1907, which was a re-enactment from the Code of 1896 of a codification of an act passed by the Legislature of Alabama on December 10, 1892. Acts 1892–93, page 42.

Section 5443 of the Code provides that, "when any person is in peaceable possession of lands, whether actual or constructive, claiming to own the same, in his own right or as personal representative or guardian, and his title thereto, or to any part thereof, is denied or disputed, or any other person claims or is reputed to own the same, or any part thereof, or any interest therein, or to hold any lien or incumbrance thereon, and no suit is pending to enforce or test the validity of such title, claim, or incumbrance, such person or his personal representative or guardian, so in possession, may bring and maintain a suit in equity to settle the title to such lands, and to clear up *all* doubts or disputes concerning the same." (Italics mine.)

Section 5444 reads as follows: "The bill must describe the land with certainty, must allege the possession and ownership of the complainant, and that the defendant claims or is reputed to claim some right, title, or interest in or incumbrance upon such lands, and must call upon him to set forth and specify his title, claim, interest, or incumbrance, and how and by what instrument the same is derived and created."

Section 5445 provides what is necessary for the defendant's answer to contain and requires him to set up whatever title or claim he has on the land.

Section 5446 provides that either party may demand a jury trial to determine the issue and that the court shall "adjudge and decree whether the defendant has any right, title, or interest in, or incumbrance upon, such lands, * * * and such decree is binding and conclusive upon all the parties to the suit."

Section 5447 provides that the decree of the chancellor shall be recorded in the probate court.

Section 5448 provides that no costs shall be taxed against a defendant who suffers a decree pro confesso against him, or who in his answer disclaims all interest in the land.

As originally passed, the act had as section 6 the following words: "That *all* proceedings had under this act, except as herein otherwise provided, shall be had in accordance with the practice in courts of equity in this state." (Italics mine.)

The original act makes no provision for service on the defendant, except that of section six above quoted. The effect of this provision was to make the then rules of equity practice applicable to proceedings under this act. Section 3106, Code of 1907, had been in force many years and authorized the making of unknown parties by description, and publication of notice to them.

Defendant claims under deed executed November 25, 1922, by Audley G. Butler and W. Norman Butler, as the sole heirs at law of Lemuel Butler, which deed was executed by Audley G. Butler in Queens county, N. Y., on the day of its date, and by W. Norman Butler in Muscatine county, Iowa, on the 27th of November, 1922, and which was recorded in the probate court of Clark county, on November 25, 1922.

In the plaintiff's proof they offered a transcript of the bill and proceedings in the Clark county chancery court above referred to, which contained the jurisdictional allegations and proper prayer. The lands were properly described. The third paragraph in the bill reads as follows: "Orators further show that Lemuel Butler and Seth Wright, * * * who are now dead, were in their lifetime reputed to claim some right, title, or interest in, or incumbrance upon the above-described lands, or some portion thereof, and that, since their death, the heirs and other representatives of said decedents above named are reputed to claim some right, title, or interest in, or incumbrance on, said lands or some portion thereof."

The bill was sworn to, and alleged that after diligent inquiry they were unable to learn the names and residences of such heirs, and there was an order of publication against the unknown heirs and other representatives of

Lemuel Butler. There was proof of due publication, showing the prescribed publication against these heirs as nonresidents. This was followed by a decree pro confesso against them and a final decree by the chancellor, in which it was declared: "It is therefore ordered, adjudged, and decreed that the heirs and other representatives of Lemuel Butler * * * and all claiming under them have no right, title, or estate or interest in or incumbrance upon the following described lands or any part thereof." The decree then proceeds to describe the lands and orders the register to have the decree recorded in the probate court, which was done, and then taxed the cost against complainant.

Defendant objected to the transcript, because the proceedings were void, in that the defendants were not named, but were referred to as a class, namely, the heirs at law and representatives of Lemuel Butler, deceased. They cite in support of this objection the case of Gill v. More, 200 Ala. 511, 76 So. 453. If this case construes the act of the Legislature and the Code, so as to hold that these statutory provisions did not permit the naming of a class as defendants to a bill to quiet title, then this court is bound by such construction of the highest court of the state of Alabama. I therefore come to the question whether the court has so held.

The Supreme Court of Alabama, at the time this decree was rendered, was composed of seven judges, and there was a special statute which permitted the division of the court into two divisions, so that four of them might hear cases, while the other three were working on other matters, and the report of this case shows that it was heard by only four judges; the opinion being written by Justice Thomas, in which he discusses the questions at considerable length.

Let us first see what was before the court. The appeal was taken from a ruling on demurrer by the circuit court of Mobile county, sitting in equity, to a bill which sought to set aside a decree quieting title in favor of one Gill against Abraham G. Moore and his heirs at law. A bill was filed by Anna S. More and another against Gill, in which it was charged that Gill had perpetrated a fraud against the court by falsely alleging that at the time of the filing of his bill he was in the peaceful possession of the lands described therein, and that he owned the same, and further that he had exercised due diligence in ascertaining the names and residences of the heirs of said Abraham G. Moore. It further appears that in the proceedings to quiet title Gill named the defendant as Abraham G. Moore, and publication was against him and his heirs, and that the name of the defendant was More, not Moore.

The bill also contains allegations to the effect that complainants had, after the death of Abraham G. More, maintained an agent in the city of Mobile, who was well known there, and who properly assessed the lands so described, and paid taxes thereon, and looked after the land, and if diligent inquiry had been made that all these facts would have been discovered, including the names and residence of the heirs at law of Abraham G. More. To this bill Gill, the defendant who had been complainant in the bill to quiet title, demurred. The chancellor overruled the demurrer, and from this ruling an appeal was taken. So we see the only question before the court was the correctness of the ruling on the demurrer. It further appeared that in the bill to quiet title the defendants were named as follows: "Abraham G. Moore, or, if dead, his devisees, heirs, next of kin, all of whom are made defendants to this bill of complaint."

Justice Thomas discusses the demurrers and the allegations in the bill to quiet title which have just been quoted, and contends that only those parties who can be *named* may be made parties defendant, and that classes such as children of a named party, or heirs of a deceased party may not be named as defendants. I am constrained to differ with him, and to insist that such holding is not that of the court, but only the view of Justice Thomas. He further contends that the court is unable to tell whether More or his heirs at law were made defendants, because, if More was living, he could have no heirs who could be made party defendants; if, on the other hand, More was dead, he could not be a party, and would not be bound by the decree, hence the proceedings were void.

We might agree with this argument. He then proceeds to discuss the difference in the name, and then recites that in this respect the other justices do not agree with him. After discussing these matters at length, we find the following language on page 520 (76 So. 462):

"Under the averments of the present bill we are constrained to hold that our statutes giving the right to quiet titles to lands as to adverse claims, etc., impose on the complainant in such an action the affirmative and active duty to make a bona fide and reasonably diligent inquiry to ascertain the names and residences of all persons who claim or own an adverse interest in the lands, the titles to

which are sought to be quieted, and who are sought to be concluded by the decree, and to make them parties respondent. Failing in this duty, colorable jurisdiction cannot be given a court of equity to proceed therein, and under such failure of duty no statutory authority exists for bringing in as parties respondent on the perfecting of service of process by publication supposed or actual parties in interest. Leigh v. Green, 64 Neb. 533, 90 N. W. 255, 101 Am. St. Rep. 592; Mulvey v. Gibbons, 87 Ill. 367; Farnham v. Thomas, 56 Vt. 33; Title & Doc. Co. v. Kerrigan, 150 Cal. 289, 88 P. 356, 8 L. R. A. (N. S.) 682, 119 Am. St. Rep. 199. So construed, the Alabama statute providing for perfecting service by publication against nonresident defendants whose property rights in lands are being dealt with or sought to be concluded by judicial proceedings thereunder affords due process of law. See the leading cases on 'due process of law.' Windsor v. McVeigh, 93 U. S. 274, 23 L. Ed. 914; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Haddock v. Haddock, 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1. It is elementary that there must be parties to a cause of action. They are jurisdictional. Wiebbold v. Hermann, 2 Mont. 609; Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; Williams v. Eggleston, 170 U. S. 304, 311, 18 S. Ct. 617, 42 L. Ed. 1047. It is also held that where, under a Code provision, a defendant may be designated by a fictitious name, the plaintiff being ignorant of his real name, such fact of ignorance must be alleged, and the ignorance be genuine. Gardner v. Kraft, 52 How. Prac. (N. Y.) 499; Crandall v. Beach, 7 How. Prac. (N. Y.) 271. And in such case, as soon as the real name is ascertained, it must be substituted by amendment, and this does not change the cause of action. McCabe v. Doe, 2 E. D. Smith (N. Y.) 64; Hancock v. Sears, 93 N. Y. 82; Gould on Pleading 6th Ed. p. 240."

The significant thing about this is the fact that, at its conclusion, the decree of the chancellor is affirmed, and then we find: "Anderson, C. J., and Mayfield and Somerville, JJ., concur in result." From this we find that the opinion is that of Justice Thomas, and not of the *court*, while the conclusion that the demurrer was properly overruled by the lower court is that of the court.

This presents the peculiar fact, namely, that the opinion is the expression of one judge out of seven, as to which no other judge has expressed an agreement. The bar and the bench would readily assume that the opinion is the expression of the court, and feel that they were bound by it; but here we find that is not the case, and from this finding I feel perfectly free to state that this opinion contains no binding construction upon the act to quiet title, and I am left to construe this act on the question before me as one of first impression.

Proceeding now to the proper construction of the act, I notice first that the act gives to the person who is in possession of the land the right to quiet his title and claims against *all* parties who dispute the same. It is true the act styles the parties as the complainant and defendant, but the Code of Alabama (section 1) declares this to be complainants and defendants as well. Jurisdiction is given the chancery court to hear these matters, and as the act contains no express provision as to making parties or serving them, undoubtedly the general rules of the chancery court would apply, even in the absence of this express provision found in section 6 of the original act.

That the chancery court has always had the power, when parties were unknown, but could be described so as to identify them, to bring into a suit such unknown parties by such description as would identify them, is a matter of common knowledge and of general practice; hence I assume that this act, after giving to the possessor of lands the right to go into an equity court and have his lands quieted against *all* adverse claims asserted, leaves him to the general powers and provisions of the equity court as to how the defendants are to be described and brought in. That the equity court not only had the power to make parties defendant who belonged to a class but to give notice by publication to such parties is equally well known.

Let us suppose, for instance, that the records show a patent issued to one John James, and 40 or 50 years thereafter William Jones acquires a title which has been asserted for 30 years, and comes into possession of the lands. He finds the record entry of John James, and he makes diligent inquiry, and he finds John James lived in some small Georgia town; that John James married, had one son born, and died, and his wife is also dead. He is unable to learn the name of the boy, or where he has gone, or what has become of him. Can it be doubted that the equity court would have the power to order publication made on proper showing about this boy as the son of John James. Then go a step further: Suppose the information acquired is that John James left three children, two boys and a girl, but that there

the information stops; certainly, if the court could advertise as to one child, it could also advertise as to the three children, describing them as children of John James, whose names, ages, and residences are unknown, but properly describe them as the heirs or children of John James. I assume no well-informed lawyer would question the power of the court to do this, and, if so, then surely the court would have the power under this statute to make the children or heirs at law of Lemuel Butler parties defendant and advertise them in this way.

We must remember that, in the case before the court in Gill v. More, the court had before it a direct attack on the proceedings of the chancery court by a bill to set aside those proceedings, both as having been a fraud on the jurisdiction of the court and because of the uncertainty of the parties, in that the defendant was undertaking to name Abraham G. Moore, or, if dead, his children, a condition which does not exist in the present case. I assume that Justice Thomas was misled in the views he expressed by the case of Hill v. Henry, 66 N. J. Eq. 150, 57 A. 554. It is true that the Alabama act was copied in the main from the New Jersey act, and it is also true that any construction by the New Jersey highest court, rendered before the passage of the act by the Alabama Legislature, would be binding; but we have seen that the act was passed by the Alabama Legislature December 10, 1892, while the decision of the case of Hill v. Henry was March 25, 1904, so I do not think that the views expressed by that court would be binding upon the Alabama courts.

The opinion in the Hill Case is based on the finding that the New Jersey statute, authorizing the chancery court to publish notice against unknown parties, cannot be applied to the act to quiet title. The Alabama act in section 6 makes the chancery procedure applicable, and the Gill opinion I am discussing expressly concedes this power.

The New Jersey act as passed contains section 5, which reads as follows: "That upon application of either party, an issue at law shall be directed to try the validity of such claim, or to settle the facts, or any specified portion of the facts upon which the same depends, and the Court of Chancery shall be bound by the result of such issue, but may, for sufficient reasons, order a new trial thereof, according to the practice in such cases; and when such issue is not requested, or as to the facts for which the same is not requested, *the Court of Chancery shall proceed to inquire into and deter-*

*mine such claims, interest and estate, according to the course and practice of that court,* and shall, upon the finding of such issue, or upon such inquiry and determination, finally settle and adjudge whether the defendant has any estate, interest or right in, or incumbrance upon said lands, or any part thereof, and what such interest, estate, right or incumbrance is, and in or upon what part of said lands the same exists." 4 Comp. St. 1910, p. 5402. I italicize the words referring to the chancery court.

A comparison between the provisions herein contained and the provisions of section 6 as passed in Alabama will be at once observed. In the first place, it will be seen that the provisions as to powers of the equity court in the New Jersey act are found in the section providing for the jury trial and final disposition of the case, while in the Alabama act it is made a separate and distinct section, which necessarily makes all the provisions in the act, such as making party defendants and bringing them into court, as well as the final hearing, controllable or to be taken under the practice of the equity court.

While I would differ with the New Jersey court in its conclusion reached in the Hill Case, certainly with my attention called to the difference between the language in the New Jersey act referring to the chancery procedure and that in the Alabama act, I insist that the reason which induced the New Jersey court to reach its conclusion is wanting when we examine the Alabama act. On the contrary, the provisions of the Alabama act necessarily confer on the chancery court in proceedings under this act all of the powers it would have under the Alabama act.

I have considered the opinion in Hill v. Henry, and to my mind, assuming the two acts were the same, the opinion, just as the opinion of Justice Thomas itself, places too narrow a construction upon the provisions of the act. It deprives parties, who are in possession of land, claiming them, of rights which the Legislature certainly intended to give them, and limits them to only a few cases while the Legislature intended the provisions to be broad and comprehensive.

What is there in the act which shows a requirement that no defendant should be made in a suit to quiet title unless his name and residence could be given? What is there in the act, I again say, which shows the intent to take away from the chancery court the power to name defendants as a class and bind them by that description? What is there in the act showing intent to limit the

right of a possessor of lands as against people who could be definitely described as a class, when by the use of greatest diligence the possessor could not get their names and addresses?

To fix such a limitation upon the words used in this act is, I repeat, to take away from the possessors of land rights which they have been granted by the Legislature, without any such intent being shown in the act, or in the law, or in the facts. As I construe this act, the question is left to the determination of the chancery court under the law and its rules regulating the proceedings in it, as to who may be made party defendants, and as to how they may be served, and when a litigant comes into that court, who is able to state on oath, as was done in this case, that he has made diligent inquiry and has learned that the title stands in the name of a man who is dead, and that he left children whose names he has been unable to learn after diligent inquiry, that the court has every power to make these children parties as a class, which it had in any other chancery proceedings, and to publish notice as to them and bind them by its decree. Hence I think the decree in this case is sufficient to bind the children of Lemuel Butler, and I find that they had no title or interest in this land which they could convey to any one. ,

I notice with interest that what Justice Thomas has said in his opinion in the parts which I have quoted, beginning, "under the averments of the present bill we are constrained to hold," is in accordance with the view I have expressed, and undoubtedly this portion was put in after the writing of the opinion by Justice Thomas and a conference with the other judges of the court, because that is the first part of the opinion in which he used language which purports to bind the court as a court, and I find by this language that the court holds that the complainant has the duty to make a bona fide and reasonably diligent inquiry to ascertain the names and residences of all persons who claim or own an adverse interest in the lands. Failing in this duty, the court finds no statutory authority for bringing in party respondents and ordering service on them by process of publication.

This concedes the power of the court to publish notice as to unknown parties. So, also, does the following language: "So construed, the Alabama statute providing for perfecting service by publication against nonresident defendants whose property rights in lands are being dealt with or sought to be concluded by judicial proceedings

thereunder affords due process of law." This concedes that in bills to quiet title this Alabama statute confers upon the court this power.

Now, take the statement, also contained in the last paragraph quoted: "It is also held that where, under a Code provision, a defendant may be designated by a fictitious name, the plaintiff being ignorant of his real name, such fact of ignorance must be alleged and the ignorance genuine." This certainly concedes all that I have urged, namely, that the court has the power to designate defendants by class, where the plaintiff makes proper showing of his diligent inquiry for defendant's name and address. So I insist, not only that I am correct in my construction of the act, but that that part of Justice Thomas' opinion which shows that he has undertaken to bind the court is in conflict with that part which was written as his individual view, and that this latter part concedes the very point I have urged in this opinion.